IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| OLIVIER WILLIAMS, and all others similarly situated, | : : : | |
| Plaintiffs, | : : | |
| v. | : : | CASE NO.: 5:20-CV-361 (LAG) |
| THE CORPORATION OF MERCER UNIVERSITY, | : : : : | |
| Defendant. | : : | |

# ORDER

Before the Court is Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 27). For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

## FACTUAL BACKGROUND

Plaintiff Olivier Williams, a Georgia citizen, was an undergraduate student at Mercer University during the Spring 2020 semester. (Doc. 25 ¶¶ 14–15). Plaintiff paid approximately $8,550 in tuition and $6,145 in mandatory fees. (*Id*. ¶ 14). The mandatory fees included a $150 facility and technology fee, a $3,795 housing fee, a $75 study abroad fee, a $500 study abroad deposit and program fee, and a $1,625 study abroad program fee. (*Id.*). In response to the COVID-19 pandemic, Defendant The Corporation of Mercer University, a Georgia corporation, moved all coursework online on or around March 15, 2020. (*Id.* ¶¶ 1, 5). Around the same time, Defendant also stopped providing any services or facilities the mandatory fees were intended to cover. (*Id.* ¶ 4). Defendant, however, did not provide refunds to students when it stopped providing services and operating these facilities. (*Id.* ¶¶ 8–9).

Plaintiff's putative class action alleges that she, and other students, entered into a contractual agreement where Plaintiff and class members would pay tuition and fees and

Defendant would provide "in-person and on-campus educational services, experiences, and opportunities." (*Id.* ¶ 25). Plaintiff alleges that she made payments to Defendant based on promises Defendant highlighted in marketing materials, advertisements, and other documents that touted in-person and on-campus educational services. (*Id.* ¶¶ 26, 29). Plaintiff contends that students "did not choose to attend an online-only institution of higher learning, but instead chose to enroll in the University's in-person educational programs." (*Id.* ¶ 36). After Defendant moved classes online, Plaintiff alleges that her educational experience became "sub-par," due to lack of classroom interaction, lack of collaborative learning, denial of access to facilities integral to a college education, and denial of campus activities and services—which foster development and career networking. (*Id.* ¶¶ 42–46). Plaintiff further alleges that she, and other class members, are entitled to a prorated refund of tuition and mandatory fees paid during the Spring 2020 semester. (*Id.* ¶ 50).

Plaintiff's Amended Complaint alleges three counts against Defendant:

1. breach of contract (*id.* ¶¶ 63–89);
2. unjust enrichment (*id.* ¶¶ 90–99); and
3. expenses of litigation under O.C.G.A. § 13-6-11 (*id.* ¶¶ 100–02).

In her prayer for relief, Plaintiff seeks certification of the class as defined as: "[a]ll persons who paid tuition and/or Mandatory Fees for a student to attend in-person class(es) during the Spring 2020, or any other semester affected by COVID-19 at Mercer but had their class(es) moved to online only learning (the 'Class')." (*Id.* ¶ 52). Additionally, Plaintiff seeks declaratory, equitable, and monetary relief in the form of an order finding in favor of Plaintiff and the Class, damages to be determined by the trier of fact, an order compelling disgorgement of the ill-gotten gains derived by Defendant, restitution, and all other forms of equitable monetary relief. (*Id.* at 21). Plaintiff further seeks attorney fees, costs, and expenses, pre and post-judgment interest on any amounts awarded, and any further injunctive and declaratory relief deemed just and proper. (*Id.* at 22).

## PROCEDURAL BACKGROUND

Plaintiff filed this putative class action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), on September 14, 2020. (Doc. 1). After waiving service (Doc. 13), Defendant filed its First Motion to Dismiss on November 4, 2020. (Doc. 18). The same day, Defendant filed a Motion to Stay Discovery pending resolution of its Motion to Dismiss. (Doc. 19). The Parties then filed a Consent Motion that established: (1) a schedule for Plaintiff to amend her complaint, (2) a briefing schedule should Defendant file a renewed motion to dismiss, and (3) a stay of discovery. (Doc. 24). On November 23, 2020, Plaintiff filed her Amended Complaint. (Doc. 25). The next day, the Court granted the Consent Motion and denied as moot Defendant's Motion to Stay and initial Motion to Dismiss. (Doc. 26). On December 21, 2020, Defendant timely filed its Renewed Motion to Dismiss (Doc. 27), and the Parties filed a Consent Motion to Stay (Doc. 28). The Court granted the Motion to Stay on January 6, 2021. (Doc. 29). Plaintiff filed her Response on January 21, 2021. (Doc. 30). Defendant filed its Reply on February 5, 2021. (Doc. 31). Defendant's Renewed Motion to Dismiss is now ripe for review. *See* M.D. L.R. 7.3.1(A).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if the complaint alleges enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A complaint must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. The Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs," but the same liberal reading does not apply to legal conclusions. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). "[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678–79. Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

3

statements, do not suffice." *Id.* at 678.

A court ordinarily does not consider anything beyond the complaint and documents attached thereto when ruling on a motion to dismiss. There is an exception, however, for documents (1) that the plaintiff references in the complaint, (2) that are central to the plaintiff's claim, (3) whose contents are not in dispute, and (4) that the defendant attaches to its motion to dismiss. *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018). The requirement that the document's contents not be in dispute goes to authenticity. *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1285 (11th Cir. 2007) (per curiam). Defendant attached its 2019–20 Cecil B. Day Campus (Atlanta) Catalog and its 2019–20 Macon Campus Catalog. (Docs. 27-1, 27-2). The catalogs are referenced in the Amended Complaint, are central to Plaintiff's claims, and their authenticity is not in dispute. (*See* Doc. 25 ¶¶ 74–75, 79–80). Therefore, the Court considers them, and such consideration of these documents does not convert the Motion to a motion for summary judgment under Federal Rule of Civil Procedure 12(d).

## DISCUSSION

Defendant argues that Plaintiff's Amended Complaint must be dismissed for six reasons. First, the doctrine of judicial nonintervention in academic matters requires dismissal. (Doc. 27 at 10–13). Second, under Georgia law, Plaintiff has failed to state a plausible claim from breach of contract. (*Id.* at 13–17). Third, Defendant had a contractual right to change its rules and academic requirements and thus did not breach any agreement. (*Id.* at 17–19). Fourth, Plaintiff failed to perform a condition precedent to obtain a refund. (*Id.* at 19–24). Fifth, the absences of any dispute as to the existence of a contract requires dismissal of Plaintiff's unjust enrichment claim. (*Id.* at 24–25). Last, the failure of Plaintiff's other claims requires dismissal of her attorney's fees claim. (*Id.* at 25).

### I.   Doctrine of Judicial Nonintervention

Defendant first argues that the doctrine of judicial nonintervention in academic matters requires dismissal of Plaintiff's Amended Complaint. (*Id.* at 10). Defendant contends that "Plaintiff's claim that she is entitled to a refund would *require* a ruling on whether the online instruction in her courses was academically inferior to in-person

4

instruction." (*Id.* at 11; Doc. 31 at 6–7). Plaintiff responds by asserting that Defendant mischaracterizes her Amended Complaint as an educational malpractice claim and that judicial nonintervention, or academic deference, is inapplicable to a university's commercial activities. (Doc. 30 at 5).

"It is well established that the student-university relationship is essentially contractual in nature." *Pinder v. John Marshall Law School, LLC*, 11 F. Supp. 3d 1208, 1266 (N.D. Ga. 2014) (citing *Mangala v. Brown Univ.*, 135 F.3d 80, 83 (1st Cir. 1998)). Both the United States Supreme Court and the Georgia Supreme Court, however, have stated that "courts are unsuited to evaluate academic decisions made by university administrators and faculty members." *Yancey v. Clark Atlanta Univ.*, No. 1:09-CV-1101-TWT, 2010 WL 1265181, at *3 (N.D. Ga. Mar. 25, 2010) (first citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 226 (1985); and then citing *Woodruff v. Ga. State Univ.*, 304 S.E.2d 697, 698–99 (Ga. 1983)). This is so because "educational contracts have unique qualities and are to be construed in a manner which leaves the school sufficient discretion to 'properly exercise its educational responsibility.'" *Jansen v. Emory Univ.*, 440 F. Supp. 1060, 1062 (N.D. Ga. 1977) (quoting *Mahavongsanan v. Hall*, 529 F.2d 448, 450 (5th Cir. 1976)). Courts are advised to exercise discretion and not intercede in academic decision making where "judicial action . . . would require continuing supervision of the official conduct of public officers." *Deriso v. Cooper*, 272 S.E.2d 274, 276 (Ga. 1980) (citations omitted). Judicial restraint in academic decisions also "stems from [the] confidence that school authorities are able to discharge their academic duties in fairness and with competence. It is born alike of the necessity for shielding the courts from an incalculable new potential for lawsuits, testing every Latin grade and every selection for the Safety Patrol." *Woodruff*, 304 S.E.2d at 699; *see also Jansen*, 440 F. Supp at 1063 ("[C]ourts are not empowered to review the manner of grading students and the setting of degree requirements.").

It is, however, appropriate for courts to review claims regarding breach of contract alleging that an educational institution has made a specific promise to provide an educational service but fails to deliver on that promise. *See, e.g.*, *Doe v. Emory Univ.*,

No. 1:20-CV-2002-TWT, 2021 WL 358391, at *2–4 (N.D. Ga. Jan. 22, 2021) (declining to exercise judicial nonintervention in response to a university's COVID-19 response). As the Seventh Circuit explained:

> [i]n these cases, the essence of the plaintiff's complaint would not be that the institution failed to perform adequately a promised educational service, but rather that it failed to perform that service at all. Ruling on this issue would not require an inquiry into the nuances of educational processes and theories, but rather an objective assessment of whether the institution made a good faith effort to perform on its promise.

*Ross v. Creighton Univ.*, 957 F.2d 410, 417 (7th Cir. 1992). Additionally, as our sister court found in *Doe v. Emory University*, "[i]n comparing [the] rationale [for judicial nonintervention] to the case before the court, it appears there are two significant distinguishing features." 2021 WL 358391, at *4. First, the nature of this suit is noncontinuous. *Id.* Unlike grading, student discipline, or committee selections, a university's "response to a global pandemic is—hopefully—an uncommon event." *Id.* Thus, adjudicating the dispute here over Defendant's response does not imply a "burden of continuous legal turmoil." *Woodruff*, 304 S.E.2d at 699. Second, the standards that govern this case are within the Court's capabilities. Defendant frames Plaintiff's Complaint and "demand for a refund as *expressly* predicated on the alleged academic inferiority of online instruction." (Doc. 31 at 6).

Here, while Plaintiff makes allegations that the "online learning options" were "sub-par" and complains about the pass-fail grading system Defendant used in the Spring 2020 semester, the gravamen of Plaintiff's Complaint is a standard contract dispute. (*See* Doc. 25 ¶¶ 42–43). The questions before the Court are the questions presented in every contract case: (1) Did a contract exist?; and (2) if so, did Defendant materially breach that contract? In this case, the specific questions are: (1) whether Defendant promised to provide in-person education and on campus services; and (2) whether Defendant breached those promises. (*Id.* ¶¶ 10, 71, 73; Doc. 30 at 5–6). Judicial intervention here would not require continuous judicial intrusion, and the court can properly and justly evaluate the dispute without evaluating any academic decisions. Accordingly, the Court may

6

appropriately review this matter.[1]

## II. Breach of Contract

Defendant next argues that Plaintiff's breach of contract claim fails for three reasons. First, Plaintiff fails to state a plausible claim of breach of contract. (Doc. 27 at 13–17). Second, even if Plaintiff's claim was sufficiently pleaded, Defendant did not breach the contract because it had the right to change its rules and academic requirements. (*Id.* at 17–19). Last, Plaintiff failed to satisfy a condition precedent stated in Defendant's refund policy. (*Id.* at 19–24).

### A. Failure to Plead

Defendant contends that Plaintiff failed to plausibly plead a breach of contract claim because: (1) Plaintiff failed to cite any language in any document setting forth an agreement that requires Defendant to provide in-person education or access to specific facilities or services, (2) Plaintiff's assertions that Defendant assented to the agreement she alleges is conclusory, and (3) Plaintiff cited evidence that Defendant provided online instruction before the pandemic, which means that her allegation that Defendant contractually agreed that it was required to provide in-person education is implausible. (Doc. 27 at 13–17). In response, Plaintiff argues that Defendant misstates the federal procedural rules, and that Plaintiff is not required to attach the contract or recite its terms verbatim. (Doc. 30 at 10). Plaintiff also argues that her allegations are not conclusory and that Defendant's argument regarding previous offerings of online classes is nonsensical. (*Id.* at 11–16).

Under Georgia law, the elements of a breach of contract claim are: "(1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." *Brooks v. Branch Banking & Trust Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015); *see also Norton v. Budget Rent A Car Sys., Inc.*, 705 S.E.2d 305, 306 (Ga. Ct. App. 2010). To survive

---

[1] As noted by Judge Thrash in *Emory University*, the Court's "finding[, however,] 'may well be a double-edged sword' for the Plaintiff[]." 2021 WL 358391, at *4 (quoting *Rosado v. Barry Univ. Inc.*, No. 1:20-CV-21813-JEM, 2020 WL 6438684, at *4 (S.D. Fla. Oct. 30, 2020)). "While limiting the inquiry to these narrow questions allows the Court to evaluate this dispute, it also limits the scope of any relevant breach." *Id.* at *4. In evaluating Plaintiff's contract claims, the Court will only evaluate the alleged breach of a promise for in-person education and access to facilities—not whether Defendant's COVID-19 response resulted in a "sub-par" educational experience.

Defendant's Motion to Dismiss, Plaintiff must sufficiently plead all three of these elements.

"[A] plaintiff asserting a breach of contract claim must allege a particular contractual provision that the defendants violated to survive a motion to dismiss." *Brooks*, 107 F. Supp. 3d at 1296 (internal quotation marks omitted). Under Georgia law, "private universities in Georgia form[] contracts with their students via the student handbook issued during the student's enrollment" and through bulletins or catalogs. *Barnes v. Zaccari*, 757 F. Supp. 2d 1313, 1335 (N.D. Ga. 2010) (citing *Morehouse Coll., Inc. v. McGaha*, 627 S.E.2d 39, 42 (Ga. Ct. App. 2005); *Kuritzky v. Emory Univ.*, 669 S.E.2d 179 (Ga. Ct. App. 2008); *Life Chiropractic Coll., Inc. v. Fuchs*, 337 S.E.2d 45, 48 (Ga. Ct. App. 1985)), *aff'd in part, rev'd in part and remanded*, 669 F.3d 1295 (11th Cir. 2012), *vacated in part*, 592 F. App'x 859 (11th Cir. 2015) (per curiam). As other courts in this circuit have found, specific contractual terms can also be found in university policies and course webpages. *See, e.g.*, *McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251, 1253 (S.D. Fla. 2006) (university policies); *Emory Univ.*, 2021 WL 358391, at *6 (course webpages). "In other words, this is not a typical contract situation where there is an express document with delineated terms that a plaintiff can reference. It is more nebulous." *Salerno v. Fla. S. Coll.*, 488 F. Supp. 3d 1211, 1218 (M.D. Fla. 2020).

Plaintiff alleges that, on one of Defendant's course webpages, in "the MyMercer Portal Course Details, [for] . . . Spring 2020, it specifically identified that the University would utilize the following 'delivery method' for specific classes: 'Classroom' and identified a location by specific campus." (Doc. 25 ¶¶ 34, 76). Further, Plaintiff alleges that the "course catalog and course details provided Plaintiff and the Class with information regarding . . . the delivery method, and the location in which the courses would be held." (*Id.* ¶¶ 74–75). Thus, Plaintiff has alleged that a specific contractual provision has been violated.

Plaintiff also adequately has alleged mutual assent. Defendant argues that Plaintiff's breach of contract claim is conclusory because Plaintiff's reliance on pictures, Defendant's website and brochure, "marketing materials, an application, an acceptance letter, [and] course schedules" do not show Defendant's assent to be bound. (Doc. 27 at 14). Defendant

8

also asserts that while Plaintiff does not have to attach these documents, she failed to "allege factual matter that [these references] establish[] the plausibility of her claim." (Doc. 31 at 8). Plaintiff contends that these references do demonstrate mutual assent and that her Amended Complaint is well-pled. (Doc. 30 at 12–16).

In Georgia, "[t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. With regard to the assent of the parties, known as "mutual assent,"

> [Georgia] courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent. Further, in cases such as this one, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement. Where such extrinsic evidence exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury.

*Turner Broadcasting Sys., Inc. v. McDavid*, 693 S.E.2d 873, 878 (Ga. Ct. App. 2010) (citations omitted). Thus, there is mutual assent where the parties "have a distinct intention common to both and without doubt or difference. Until all understand alike, there can be no assent . . . to the same thing in the same sense, and their minds must meet as to all the terms." *Simmons v. McBride*, 492 S.E.2d 738, 739 (Ga. Ct. App. 1997) (omission in original) (quoting *Christensen v. Roberds of Atlanta*, 375 S.E.2d 267, 270 (Ga Ct. App. 1988)). Furthermore, extrinsic evidence can be considered when determining whether there was mutual assent. *See McReynolds v. Krebs*, 725 S.E.2d 584, 588 (Ga. 2012) (noting that "courts are free to consider such extrinsic evidence" when "deciding if there was a mutual assent to an agreement" (internal quotations omitted) (citation omitted)). At the motion to dismiss stage, a claim may proceed where Plaintiff sufficiently pleads factual allegations that could plausibly indicate mutual assent by the parties that Defendant would provide in-person instruction or on-campus services and facilities.

Plaintiff's first count is labeled "breach of contract," and the factual allegations suggest that Plaintiff desires to proceed on both a theory of express contract and a theory of implied contract. (Doc. 25 ¶¶ 63–89). As Plaintiff does not state specifically under which theory she is moving, the Court will construe Plaintiff's allegations as claims under both theories. *See, e.g.*, *Certain Underwriters at Lloyd's of London, UK v. Ocean Walk Resort Condo. Ass'n*, No. 6:16-cv-258-Orl-37GJK, 2017 WL 3034069, at *4 (M.D. Fla. July 18, 2017) (construing plaintiff's "Breach of Implied Contract" claim as alternative claims for both breach of express and implied contract).

Plaintiff adequately has alleged at least one fact supporting mutual assent on this point—the language on the MyMercer Portal Course Details page stating that the delivery method for instruction was "classroom." (Doc. 25 ¶¶ 34, 76, 79). Because this statement indicates the courses will be taught in-person and on a specified campus, Plaintiff sufficiently pleaded an offer made by the Defendant. *See, e.g.*, *Emory Univ.*, 2021 WL 358391, at *6 (finding that a private university's "course webpages indicating the 'Instruction Method' as 'In Person' . . . indicate[d] the courses w[ould] be taught in-person"). Plaintiff claims that when she, and other students, selected courses for the Spring 2020 semester they did so based, in part, on the delivery method in the MyMercer Portal. (Doc. 25 ¶¶ 34, 76–77). Plaintiff assented to Defendant's offer for in-person classes when she selected and paid for these courses. (*Id.* ¶¶ 83–84). Plaintiff also sufficiently alleges that Defendant breached this agreement when it transitioned classes to online only learning in mid-March 2020. (*Id.* ¶¶ 78, 85). Likewise, Plaintiff also sufficiently alleges damages for this breach. (*Id.* ¶ 87). Thus, Plaintiff's breach of express contract claim for tuition may proceed at this time.

The facts alleged also support the alternative claim for breach of implied contract. Plaintiff argues that mutual assent related to the provision of on-campus services and facilities is evidenced by a continued course of dealing and promotional and marketing materials referencing on-campus services and facilities. Generally, a course of dealing may be used to interpret an express contract, but it does not create one. *See* O.C.G.A. § 11-1-303(b); *see also* 5 GA. JUR. Article 1–General Provisions § 1:17 (2021). With regard

to the marketing and promotional materials, they constitute advertisements or "invitation[s] to enter into a bargain, rather than an offer." *Georgian Co. v. Bloom*, 108 S.E. 813, 814 (Ga. Ct. App. 1921); *see also Uhlig v. Darby Bank & Tr. Co.*, 556 F. App'x 883, 888 (11th Cir. 2014) (finding that a sales pamphlet was "[a]t best an invitation to bargain." (citation omitted)). Plaintiff has not adequately alleged the existence of an express contract with regard to the promotional and marketing materials, but the allegations in the Complaint are sufficient to allege the existence of an implied contract.

Under Georgia law, "[a]n implied-in-fact contract is one not created or evidenced by distinct and explicit language, but inferred by the law as a matter of reason and justice." *Classic Restorations, Inc. v. Bean*, 272 S.E.2d 557, 562–63 (Ga. Ct. App. 1980) (citations omitted). Because implied contracts "arise from nonverbal conduct of the parties," the Parties' previous course of dealings of providing on-campus services and facilities in exchange the payment of tuition and fees could plausibly give rise to an implied contract under Georgia law. *Davidson v. Maraj*, 609 F. App'x 994, 998–99 (11th Cir. 2015) (per curiam) (first citing 7 GA. JUR. *Contracts* § 2:1 (2015); and then citing Restatement (Second) of Contracts § 4 cmt. a, illus. 1–2 (Am. Law Inst. 1981)); *see also J.M. Clayton Co. v. Martin*, 339 S.E.2d 280, 283 (Ga. Ct. App. 1985) ("[A] continued course of dealing may suggest an implied contract . . . ." (citation omitted)). Moreover, though Defendant's promotional and marketing materials cannot represent an offer to form an express contract, as discussed above, these materials can help define the scope of any implied contract. *See Emory Univ.*, 2021 WL 358391, at *6 (citing *Newark Fire Ins. Co. v. Smith*, 167 S.E. 79, 80 (Ga. 1932)). At the motion to dismiss stage the allegations regarding the Parties' prior course of dealings and the payment of tuition and fees in exchange for on-campus services and facilities is sufficient to allege mutual assent to an implied contract. Likewise, Plaintiff has sufficiently alleged a breach of that contract and damages. (Doc. 25 ¶¶ 84, 87).

The Court notes that Georgia law does not permit "an express and implied contract for the same thing existing at the same time between the same parties." *Ga. Real Estate Props., Inc. v. Lindwall*, 692 S.E.2d 690, 693 (Ga. Ct. App. 2010) (footnote and citations omitted). But, Georgia law does not appear to bar pleading breach of express and implied

contracts in the alternative. *See Davidson*, 609 F. App'x at 999 (allowing express and implied contract claims to coexist at the motion to dismiss stage when the nature of the contract is unclear). Should both claims survive, the Court will not allow recovery of such conflicting claims.

Defendant also argues that it provided online instruction before the pandemic and therefore it was not required to offer in-person instruction. (Doc. 27 at 16–17). Whether Defendant previously offered online instruction for *some* courses is irrelevant to Plaintiff's expectation that at the time she enrolled in *specific* courses—which Defendant offered via the "delivery method" of "Classroom" on a specific campus—would be taught in person. More importantly, to the extent that this could be a defense against Plaintiff's breach of contract claims, it does not affect the fact that Plaintiff sufficiently has pleaded the claim set forth in the Complaint—the issue that is before the Court on a motion to dismiss.

### B. Defendant's Right to Change its Rules and Academic Requirements

Defendant also argues that, "[e]ven if the Parties' contract included a term requiring [Defendant] to provide in-person education and access to specified facilities and services" Plaintiff failed to state a breach because Defendant has the right to change its rules and academic requirements. (Doc. 27 at 17). Plaintiff asserts that the cases cited by Defendant do not support the proposition that universities may fundamentally alter the method of instruction while continuing to charge full tuition or cancel on-campus events and close campus facilities while continuing to charge for them. (Doc. 30 at 17–18). Plaintiff also responds Defendant's argument is misguided because it mischaracterizes Plaintiff's claims, which do not challenge Defendant's decision to cancel in-person learning and close campus facilities. (*Id.* at 16).

Defendant argues that, based on *Mahavongsanan*, it did not breach any contract with plaintiff because "[i]mplicit in [a] student's contract with [a] university upon matriculation is the student's agreement to comply with the university's rules and regulations, which the university clearly is entitled to modify so as to properly exercise its educational responsibility." 529 F.2d at 450. *Mahavongsanan*, and the other cases Defendant relies upon, do not support its proposition that it can alter the format of classroom instruction and

12

close campus services and facilities while continuing to charge for them. The cases cited by Defendant involve changes to rules and academic degree requirements, such as adding comprehensive exams, maintaining GPAs for graduation, and adding additional exams. *See, e.g.*, *Mahavongsanan*, 529 F.2d at 450 (requiring a comprehensive examination); *Hammond v. Auburn Univ.*, 669 F. Supp. 1555, 1557, 1562 (M.D. Ala. 1987) (adding a minimum GPA requirement); *Jallali v. Nova S. Univ., Inc.*, 992 So.2d 338, 340, 344 (Fla. 4th Dist. Ct. App. 2008) (adding an additional exam); *Univ. of Miss. Med. Ctr. v. Hughes*, 765 So. 2d 528, 530–531 (Miss. 2000) (adding a requirement to pass a medical exam). These cases "simply stand for the proposition that courts should defer to universities' changes to curriculum or degree requirements." *Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*, No. 6:20-cv-927-Orl-40EJK, 2021 WL 140708, at *3 n.5 (M.D. Fla. Jan. 14, 2021) (citing *Mahavongsanan*, 529 F.2d 448; *Jallali*, 992 So. 2d 338). The issue before the Court is whether Defendant promised something it later failed to deliver. Defendant has not identified, and the Court has found no Georgia case stating that deference to universities makes academic institutions immune to contract law.

### C. Condition Precedent

Defendant's final argument on the breach of contract claim is that Plaintiff failed to satisfy a condition precedent to obtain the remedy she seeks. (Doc. 27 at 20). Specifically, Defendant contends that the 2019–2020 Mercer University Catalog includes a binding refund policy, which requires students to formally withdraw to receive any refund. (*Id.* at 21; Doc. 27-1 at 4; Doc. 27-2 at 3). Defendant argues that because Plaintiff did not formally withdraw, she did not satisfy this condition precedent and therefore is ineligible for any refund. (Doc. 27 at 21). The refund policy, as articulated in Defendant's catalogs, relates to circumstances in which students seek to withdraw from a class before completing the term and is inapplicable here. The refund policy governs situations where students seek early termination of the contract and does not make withdrawal the sole remedy for a breach of contract by Defendant. Furthermore, if Defendant did, in fact, breach the contract, the provision—even if applicable—arguably would no longer be enforceable. *See Moore v. Grady Mem'l Hosp. Corp.*, 778 F. App'x 699, 706 (11th Cir. 2019) (per curiam)

13

(noting that under Georgia law when a party materially breaches a contract, the breaching party is "estop[ped] . . . from seeking to enforce the provisions of the agreement" (citing *Forest Commodity Corp. v. Lone Star Indus., Inc.*, 564 S.E.2d 755, 757–58 (Ga. Ct. App. 2002))).

### III.     Unjust Enrichment

Defendant next argues that, under Georgia law, because the Parties agree that there is a binding contract Plaintiff may not alternatively plead an unjust enrichment claim. (Doc. 27 at 20; Doc. 31 at 11). Plaintiff argues that Federal Rule of Civil Procedure 8(d)(3) allows for pleading in the alternative and that because Defendant denies the existence of Plaintiff's contract claims her unjust enrichment claim is permitted. (Doc. 30 at 20).

In Georgia, "[u]njust enrichment is an equitable principle that may be applied when there is no valid written contract between the parties[.]" *Collins v. Athens Orthopedic Clinic*, 849 S.E.2d 213, 216 (Ga. Ct. App. 2020) (second alteration in original) (citation omitted).

> [A] claim for unjust enrichment exists where a plaintiff asserts that the defendant induced or encouraged the plaintiff to provide something of value to the defendant; that the plaintiff provided a benefit to the defendant with the expectation that the defendant would be responsible for the cost thereof; and that the defendant knew of the benefit being bestowed upon it by the plaintiff and either affirmatively chose to accept the benefit or failed to reject it.

*Campbell v. Ailion*, 790 S.E.2d 68, 73 (Ga. Ct. App. 2016) (citations omitted). Plaintiff has sufficiently alleged the factual elements to pursue her unjust enrichment claim. Plaintiff alleges that Defendant—through the marketing and promotional materials encouraged Plaintiff to provide something of value to Defendant, she conferred a benefit—in the form of tuition and fees—upon Defendant in exchange for in-person instruction and access to on-campus facilities and services, and that Defendant affirmatively chose to accept the tuition and fees. (Doc. 25 ¶¶ 90–99).

As Plaintiff recognizes, her claims are on a collision course because the Georgia courts reject unjust enrichment claims where express or implied contracts exist. *See*

*Davidson*, 609 F. App'x at 998 ("When an implied-in-fact contract exists, a plaintiff may recover under the theory of *quantum meruit* but not unjust enrichment." (citing *Yoh v. Daniel*, 497 S.E.2d 392, 394 (Ga. Ct. App. 1998); *Watson v. Sierra Contracting Corp.*, 485 S.E.2d 563, 570 (Ga. Ct. App. 1997)). When a complaint "must be read as evincing some type of contract between" the parties, unjust enrichment claims are precluded. *Id.* (citation omitted). Because Plaintiff adequately has alleged breach of contract, "the equitable concept of unjust enrichment does not apply, and Plaintiff's claim for unjust enrichment is subject to dismissal." *Bryant v. Progressive Mountain Ins. Co.*, 243 F. Supp. 3d 1333, 1342 (M.D. Ga. 2017).

**IV.    Attorney's Fees**

Defendant's final argument contends that "Plaintiff's claim for expenses of litigation, including attorney's fees, cannot survive dismissal given that none of her underlying claims survive dismissal." (Doc. 27 at 25). Because Plaintiff's breach of contract claim survives the motion to dismiss, her claim for expenses of litigation under O.C.G.A. § 13-6-11 may also proceed. *Cf. Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1316 (11th Cir. 2004) (stating that claims for attorney's fees under O.C.G.A. § 13-6-11 "require[] an underlying claim").

## CONCLUSION

Accordingly, Defendant's Renewed Motion to Dismiss (Doc. 27) is **GRANTED in part** and **DENIED in part**. Defendant's Motion is **GRANTED** as to Count II, and Plaintiff's unjust enrichment claim is **DISMISSED with prejudice**. Defendant's Motion is **DENIED** as to Counts I and III. Plaintiff's breach of contract and attorney's fees claims remain. It is **FURTHER ORDERED** that the stay of discovery is lifted.

**SO ORDERED**, this 7th day of June, 2021.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, JUDGE**
**UNITED STATES DISTRICT COURT**